Slip Op. 19-104

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI HEAVY INDUSTRIES, CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ABB INC., <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Judge <br> Court No. 17-00054 |

## OPINION

[Sustaining the U.S. Department of Commerce's redetermination upon remand in the third administrative review of the antidumping duty order on large power transformers from the Republic of Korea.]

Dated: August 2, 2019

Ron Kendler, White & Case LLP, of Washington, DC, argued for Plaintiff. With him on the brief were David E. Bond and William J. Moran.

John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant. With him on the brief were Joseph H. Hunt, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was David W. Richardson, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Melissa M. Brewer, Kelley Drye & Warren LLP, of Washington, DC, argued for Defendant Intervenor. With her on the brief were David C. Smith and R. Alan Luberda.

Barnett, Judge: This matter comes before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination upon remand in this case. *See* Confidential Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 65-1.[1] Plaintiff, Hyundai Heavy Industries, Co., Ltd. ("HHI")[2] initiated this action contesting certain aspects of Commerce's final results in the third administrative review of the antidumping duty order on large power transformers ("LPT") from the Republic of Korea for the period of review August 1, 2014, through July 31, 2015. *See* Compl., ECF No. 5; *Large Power Transformers From the Republic of Korea*, 82 Fed. Reg. 13,432 (Mar. 13, 2017) (final results of antidumping duty administrative review; 2014-2015), ECF No. 17-2, and accompanying Issues and Decision Mem., A-580-867 (Mar. 6, 2017) ("I&D Mem."), ECF No. 17-3. Specifically, HHI challenged Commerce's decision to assign HHI a final weighted-average dumping margin of 60.81 percent based on the use of total facts available with an adverse

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 17-4, a Public Remand Record ("PRR"), ECF No. 68-1, a Confidential Administrative Record ("CR"), ECF No. 17-5, and a Confidential Remand Record ("CRR"), ECF No. 68-2. Parties submitted joint appendices containing record documents cited in their Rule 56.2 briefs. *See* Public J.A., ECF No. 44 (Vols. I-III); Confidential J.A. ("CJA"), ECF Nos. 40-1 (Vol. I), 41-1 (Vol. II), 42-1 (Vol. III), 43-1 (Vol. IV), 45-1 (Vol. V), 46-1 (Vol. VI), 46-2 (Vol. VII). Parties also filed joint appendices containing record documents cited in their remand briefs. *See* Confidential Remand J.A. ("CRJA"), ECF No. 84-1; Public Remand J.A., ECF No. 85-1; *see also* Public Resp. to Court's May 24, 2019 Order (May 28, 2019), ECF No. 89; Confidential Resp. to Court's May 24, 2019 Order (May 28, 2019), ECF No. 88. References are to the confidential versions of the relevant record documents, unless stated otherwise.
[2] Hyundai Electric & Energy Systems Co., Ltd. is the successor-in-interest to HHI. Letter from David E. Bond, Attorney, White & Case LLP, to the Court (Sept. 12, 2018), ECF No. 59.

inference (referred to as total "adverse facts available" or total "AFA").  *See generally* Confidential Rule 56.2 Mot. for J. Upon the Agency R. on Behalf of Pl. Hyundai Heavy Industries Co. Ltd. and Mem. of P. & A. in Supp., ECF No. 26; I&D Mem. at 4-6. Commerce based that decision on the following findings: (1) HHI failed to report service-related revenues separately from the gross unit price despite repeated requests from Commerce; (2) HHI failed to include the price of a subject "part" in the price for certain home market sales despite repeated opportunities to do so; (3) HHI failed to report separately the prices and costs for LPT accessories; and (4) HHI was systematically selective in providing documents to Commerce and reported data that contained discrepancies.  I&D Mem. at 17-28.

The court remanded this matter to the agency for Commerce to reconsider or further explain its decision to use total AFA because substantial evidence did not support all of the bases underlying that decision.  *Hyundai Heavy Indus., Co. v. United States ("HHI I")*, 42 CIT __, __, 332 F. Supp. 3d 1331, 1350 (2018).[3]  In particular, substantial evidence did not support Commerce's finding that HHI withheld requested information with respect to accessories.  *Id.* at 1346-48.  Moreover, Commerce failed to explain the basis for its finding that HHI provided selective documentation and data that contained discrepancies; accordingly, this finding lacked substantial evidence.[4]  *Id.* at 1348-49.

---

[3] *HHI I* contains additional background in this case, familiarity with which is presumed.
[4] Substantial evidence supported Commerce's findings that HHI failed to report separately service-related revenues, failed to report properly its home market sales

On remand, Commerce reconsidered its finding that HHI misreported costs and prices for accessories, its finding that HHI selectively reported information, and the legal and factual basis for the use of total AFA. Remand Results at 1-2. Commerce determined that HHI had properly reported accessories, consistent with the scope of the antidumping duty order. *Id.* at 11, 19. Commerce "clarif[ied]" that accessories are "components attached to the active part of the LPT and included within the subject merchandise." *Id.* at 19. As such, the use of AFA for HHI's reporting of accessories was unwarranted. *Id.* at 11. However, Commerce continued to find that HHI selectively reported certain sales information and provided unreliable data. *Id.* at 12. Based on this finding and those sustained by the court in *HHI I*, 332 F. Supp. 3d at 1340-42, 1345, Commerce again determined that total AFA was appropriate. *See id.* at 16, 25.

HHI supports Commerce's redetermination with respect to accessories but opposes the Remand Results in all other respects. *See* Pl.'s Comments in Supp. of the Final Results of Redetermination Pursuant to Court Remand ("HHI's Supp. Cmts"), ECF No. 79; Confidential Pl.'s Comments in Opp'n to the Final Results of Redetermination Pursuant to Court Remand ("HHI's Opp'n Cmts"), ECF No. 72. Defendant, United States ("the Government"), and Defendant-Intervenor, ABB Inc. ("ABB") support the Remand Results in their entirety.[5] *See* Confidential Def.'s Resp. to Comments on the

---

inclusive of the price of a particular within-scope part, and failed to act to the best of its ability in providing this information. *HHI I*, 332 F. Supp. 3d at 1340-43, 1345.

[5] While ABB does not challenge Commerce's findings on accessories, it avers that this issue is moot since it had no bearing on the agency's use of total AFA. Confidential Def.-Int.'s Comments in Supp. of the Final Results of Redetermination Pursuant to

Dep't of Commerce's Remand Results ("Gov.'s Supp. Cmts"), ECF No. 76; ABB's Supp. Cmts. The court heard oral argument on June 11, 2019. Docket Entry, ECF No. 91. For the reasons that follow, the court sustains the Remand Results.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[6] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." *SolarWorld Ams., Inc. v. United States*, 41 CIT __, __, 273 F. Supp. 3d 1314, 1317 (2017) (citation and internal quotation marks omitted).

### DISCUSSION

I. **Selective Reporting and Total AFA**

   a. **Commerce's Redetermination**

On remand, Commerce continued to find that HHI was selective in its reporting and provided data with various discrepancies. Remand Results at 12-13. Commerce identified the following documentation that HHI failed to provide: "(1) accounting entries to record [HHI's] U.S. sales and payments; (2) U.S. commission documents for certain U.S. sales; (3) test reports for all [U.S. sales transactions (referred to as SEQUs)]; (4)

---

Court Remand ("ABB's Supp. Cmts") at 14-15, ECF No. 78. Accordingly, ABB contends, the court need not rule on this issue. *Id.* at 15.

[6] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the United States Code are to the 2012 edition.

Korean trucking expense invoices for several U.S. sales; and (5) [certain] . . . requests for quote[s] (or "RFQs"), bids, and packing lists." *Id.* at 13 (footnotes omitted). Additionally, Commerce identified inconsistencies with reported transportation and brokerage expenses for certain U.S. sales. *Id.*; *see also id.* at 21.

Commerce found that HHI "failed to cooperate to the best of its ability in complying with requests for information" because, "despite a specific and comprehensive request for sales and expense documentation, [HHI] selectively reported what it considered 'necessary' and 'sufficient.'" *Id.* at 17. Commerce recognized that respondents sometimes make mistakes in their submissions, *id.* at 25, but attributed HHI's reporting discrepancies and omission of documents to carelessness and inferred that HHI either "was unduly delaying the [administrative review] to its benefit by not submitting the requested documentation or [] failed to put forth the maximum effort to obtain these records," *id.* at 21. Commerce further found that HHI's failure to report service-related revenues, failure to report properly the price of a subject part, and selective and unreliable reporting "render[ed] [HHI's] reporting as a whole [] unreliable"; accordingly, Commerce determined that the use of total AFA was warranted. *Id.* at 16.

### b. Parties' Arguments

HHI argues that "substantial evidence confirms the accuracy of HHI's gross unit prices" because HHI submitted documents that "overwhelmingly supported its data." HHI's Opp'n Cmts. at 3 (internal quotation marks and capitalization omitted). HHI further argues that Commerce treated HHI inconsistently with Hyosung, the other

mandatory respondent in this review, because it requested more extensive information from HHI.  *See id.* at 11-13.   Additionally, HHI challenges Commerce's decision to use an adverse inference with respect to the missing documents, arguing that Commerce failed to comply with 19 U.S.C. § 1677m(d) and Commerce's finding that HHI failed to cooperate to the best of its ability is unsupported by substantial evidence.  *Id.* at 10, 15.  HHI argues that the three issues Commerce identified, whether individually or in combination, do not support the use of total AFA.  *Id.* at 16.

The Government argues that Commerce reasonably concluded that HHI failed to provide complete sales documentation and had other reporting discrepancies.  Gov.'s Supp. Cmts at 5-12.  The Government contends that the combined effect of HHI's reporting failures supports Commerce's use of total AFA.  *Id.* at 15-18.  ABB agrees that substantial evidence supports Commerce's factual findings.  *See* ABB's Supp. Cmts at 4-9.  According to ABB, Commerce was justified in using total AFA based solely on the two issues that the court upheld in *HHI I* and HHI's failure to provide the requested information adds support for using total AFA.  *Id.* at 3.

### c. Analysis

#### i. *Missing documents; Commerce's section 1677m(d) obligation*

Substantial evidence supports Commerce's finding that HHI failed to provide certain requested documents.[7]  *See* Remand Results at 13, 21.  Commerce asked HHI

---

[7] HHI admits that it failed to provide test reports, accounting screen prints, and payment and commission documentation for one sale.  *See* HHI's Opp'n Cmts at 5, 6, 14.  As discussed herein, however, its reporting omissions were not limited to this one sale.

Court No. 17-00054                                                                                                    Page 8

to supply, for all U.S. sales, "clear documentation demonstrating that payment was received . . . (including each recording in [HHI's] accounting system regarding the sale and payment of the subject merchandise for both HHI and Hyundai [Corporation] USA . . .)."[8]  Suppl. Questionnaire (Oct. 7, 2016) ("Oct. 7, 2016 Suppl. Questionnaire") at 5-6, CR 346, PR 213, CRJA 3.  Commerce found, and HHI does not dispute, that HHI did not provide any internal accounting screen prints to document any sales.  Remand Results at 13, 22; HHI's Opp'n Cmts at 5, 14.

With respect to commission documents, Commerce requested "complete . . . expenses documentation," including "documents relating to any commissions or other fees that may be paid" for "**all** U.S. [sales]."  Oct. 7, 2016 Suppl. Questionnaire at 5-6.  Commerce determined that HHI failed to provide documents supporting its commission expenses for fourteen sales.  See Remand Results at 13 & n.61 (citations omitted).  While HHI admits that it did not provide commission documents for one sale—claiming that the omission was inadvertent—it argues that it provided commission agreements for all other U.S. sales for which it paid a commission.  HHI's Opp'n Cmts at 6.  HHI states that, on remand, it provided to Commerce a "detailed chart tracking the commission expenses reported . . . to the documentation submitted in response to the [October 7, 2016 supplemental questionnaire]."  Id. (citing Comments on the Draft Results of Redetermination Pursuant to Court Remand (Nov. 26, 2018) ("HHI's Draft

---

[8] Hyundai Corporation USA is HHI's U.S. sales affiliate.  See Resp. of Hyundai Heavy Indus. Co., Ltd. to Section C of the Questionnaire (Jan. 27, 2016) at C-1, CR 152-156, PR 91-94, CJA Vol. I, Tab 9.

Cmts"), Ex. 1, CRR 3, PRR 7, CRJA 7). HHI's chart demonstrates, however, that, for seven of the sales, HHI provided the commission agreement but omitted any supporting documentation. *See* HHI's Draft Cmts, Ex. 1 (SEQUs 11, 15-18, 23-24); *see also* Remand Results at 13 n.61 (citations omitted).

With respect to trucking invoices, HHI admits that it did not provide the invoices in question but avers that Commerce's statement is misleading. *See* HHI Supp. Cmts at 7. HHI explains that "it did not receive trucking invoices showing shipment-specific expenses for all" U.S. sales. *Id.* For sales for which it did receive an invoice, HHI provided it. *Id.* For sales for which HHI did not receive an invoice, it provided screen prints of its internal accounting system. *Id.* at 7-8. HHI did not, however, provide any source documents supporting the allocation of trucking expenses shown in the screen prints. Commerce explained that "[w]ithout complete documentation," it cannot "confirm the accuracy of [HHI's] reported data." Remand Results at 13.

Commerce identified inconsistencies in HHI's reporting of transportation and brokerage expenses as providing additional support for its finding. Specifically, Commerce identified nine sales—SEQUs 3, 5, 12-16, 21, and 22—as containing such inconsistencies and referenced ABB's administrative case brief identifying the inconsistencies. Remand Results at 13 & n.65 (citing, *inter alia*, Pet'r's Case Br. Regarding Hyundai Issues (Jan. 5, 2017) ("Pet'r's Case Br."), Attach. 4, CR 463-65, PR 280-81, CRJA 6). HHI does not identify contrary record evidence to call into question

Commerce's acceptance of these claims[9] but argues that ABB's statements were wrong.  *See* HHI's Opp'n. Br. at 10-11.

HHI argues that the agency failed to give HHI an opportunity to cure the deficiencies in its submissions as required by 19 U.S.C. § 1677m(d).  HHI's Opp'n Cmts at 15.  However, Commerce's "request for all of the U.S. sales documentation was a direct result of the deficiencies in Hyundai's original questionnaire responses."  Gov.'s Supp. Cmts at 14-15; *see also HHI I*, 332 F. Supp. 3d at 1336-38, 1343-44 (noting that the Oct. 7, 2016 Suppl. Questionnaire was Commerce's second supplemental questionnaire aimed at addressing Commerce's concerns that HHI was misreporting its gross unit prices for the U.S. and home markets).  In *HHI I*, the court considered whether Commerce met its obligations pursuant to 19 U.S.C. § 1677m(d) to notify HHI of deficiencies in its questionnaire responses and found that it did.  *See HHI I*, 332 F. Supp. 3d at 1341-42.  Section 1677m(d) does not entitle HHI to endless opportunities to cure deficiencies in its reporting.

---

[9] HHI disputes ABB's claims with respect to four of the nine sales, contending that ABB's statements were wrong and HHI's reporting was accurate.  *See* HHI's Opp'n Cmts at 10-11.  HHI's arguments fail.  For example, HHI "reported wharfage and the untranslated item expenses inconsistently in that [it] sometimes reported wharfage and untranslated expenses listed on the invoices in 'other U.S. transportation expense' and sometimes [it] did not."  Gov.'s Supp. Cmts. at 11 & n.2 (comparing SEQUs 14 and 22 with SEQUs 23 and 24) (citing Resp. to Questions 13 and 17 of the Third Suppl. Sections A, B, C and D Questionnaire (Nov. 10, 2016) ("Nov. 10, 2016 Suppl. Resp."), Attach. 3S-35 at JA101303-04, JA103113-19, JA103131-33, JA103145-4, CR 440-449, PR 241-250, CJA Vols. II-IV, CRJA 5).  HHI also avers that ABB's administrative case brief "is not substantial evidence upon which [Commerce] should have relied."  HHI's Opp'n Cmts at 10.  While true, what Commerce did was accept ABB's arguments about the record evidence, and identification of inconsistencies therein, including the record citations in support of those arguments.  *See* Pet'r's Case Br., Attach. 4.

Court No. 17-00054                                                                                           Page 11

### ii. Commerce's differential treatment of HHI and Hyosung

HHI argues that Commerce treated HHI and Hyosung inconsistently because it requested the same information from both respondents but penalized only HHI when both companies provided incomplete responses. HHI's Opp'n Cmts at 11-13. The Government and ABB argue that Commerce requested more information from HHI because it considered HHI's worksheets to be unverifiable and unreliable. Gov.'s Supp. Cmts at 12; ABB's Cmts at 9-10.

To the extent that Commerce treated HHI and Hyosung differently, it was justified in so doing. In response to this argument in the remand proceeding, Commerce explained:

> The [c]ourt has already affirmed Commerce's decision to not rely on [HHI's] worksheet information because it was unreliable and unverifiable at a late stage in the review. Because [HHI's] worksheet information was problematic, we asked for additional sales documentation to aid us in our analysis[.] We did not request additional documentation from Hyosung because we found its worksheets sufficient.

Remand Results at 21.[10] As the court discussed in *HHI I*, Commerce requested documentation to determine whether HHI was overstating U.S. gross unit prices by misreporting service-related revenues and understating home market prices by misreporting home market sales of an LPT part. 332 F. Supp. 3d at 1338, 1342. Commerce's concerns were legitimate because HHI failed to report separately service-

---

[10] The court discerns that the "worksheets" to which Commerce was referring were those that HHI submitted along with all the other documents in its November 10, 2016 response to the October 7, 2016 supplemental questionnaire. *See HHI I*, 332 F. Supp. 3d at 1338.

related revenues even though it had such revenues to report and failed to report properly its home market sales of the LPT part. *Id.* at 1340-42, 1345. It is sufficiently clear to the court that HHI was differently situated than Hyosung, justifying Commerce's different supplemental information requests.

        *iii. Adverse inference and Total AFA*

HHI argues that Commerce was not justified in using an adverse inference and, even if it was, that it was not justified in using total AFA. *See* HHI's Opp'n Cmts at 13-17. With respect to the adverse inference, HHI argues that it provided 3,300 pages of documents, reflecting that HHI "met or exceeded the level of participation that could be expected from a 'reasonable and responsible' respondent" under the circumstances. *Id.* at 13-14. According to HHI, Commerce failed to account for the difficult circumstances Commerce created when it requested documentation for all U.S. sales at a late stage in the review (i.e., after the preliminary results). *Id.* at 14-15. Moreover, HHI argues, there is no evidence that HHI was selective in its reporting. *Id.* at 13-14. The court finds that the record adequately supports Commerce's decision to make an adverse inference.

The mere production of a substantial volume of documents does not, *ipso facto*, demonstrate that a respondent acted to the best of its ability. The inquiry is "whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The court has previously determined that HHI failed to satisfy this standard when it reported service-related revenues and home market sales of an LPT part. *HHI I*, 332 F. Supp. 3d at 1343, 1345. The court now

concludes that Commerce reasonably determined that "despite a specific and comprehensive request for sales and expense documentation, [HHI] selectively reported what it considered 'necessary' and 'sufficient.'" Remand Results at 17.

At a minimum, HHI's failure to document its accounting entries provides substantial evidence for Commerce's finding. There was no ambiguity in Commerce's request for "recording[s] in your accounting system regarding the sale[s] and payment[s] of the subject merchandise for both HHI and Hyundai USA (for U.S. sales))." Oct. 7, 2016 Suppl. Questionnaire at 6. Nevertheless, HHI failed to provide those documents and failed to explain why it was not providing the documents. HHI now argues that the documents it did provide were sufficient to substantiate the gross unit prices it reported, HHI's Opp'n Cmts. at 3,[11] suggesting that HHI reported only information that it deemed necessary and sufficient. Moreover, HHI's ability to provide supporting documentation for some commission expenses indicates that additional documents existed but HHI

---

[11] HHI avers that the "'critical question . . . is whether' a respondent, through the submission of requested documents, has '**adequately substantiated the data**' that it reports." HHI's Opp'n Cmts at 3 (quoting *ABB Inc. v. United States*, 40 CIT __, __, 190 F. Supp. 3d 1159, 1168-69 (2016)). The quoted language from *ABB Inc.* related to whether substantial evidence supported Commerce's conclusion that actual cost data, submitted during an administrative review, was reliable when it differed from estimated costs submitted during the investigation phase. *See* 190 F. Supp. 3d at 1168-69. *ABB Inc.* does not stand for the proposition that a respondent may selectively report the information that it deems sufficient to substantiate its reported data. It is Commerce, not the respondents, that decides what information must be provided. *See, e.g., POSCO v. United States*, 42 CIT __, __, 296 F. Supp. 3d 1320, 1341 n.31 (2018).

Court No. 17-00054                                                                                                              Page 14

failed to provide them. Under these circumstances,[12] "it is reasonable to conclude that" HHI demonstrated "less than full cooperation." *Nippon Steel Corp.,* 337 F.3d at 1382.

Turning to HHI's argument that Commerce was not justified in using total AFA, HHI contends that its failure to report properly service-related revenues does not support the use of total AFA because, in the preceding review, Commerce determined that such a reporting failure only justified the use of partial AFA. HHI's Opp'n Cmts at 16 (citing *ABB Inc. v. United States*, 42 CIT __, __, 355 F. Supp. 3d 1206, 1215-16 (2018)). With respect to the reporting of home market sales of an LPT part, HHI argues that the reporting error "affects a single part for four sales observations," and is not enough to render the entirety of the home market prices unreliable.[13] *Id.* Regarding the missing documents, HHI argues that the omissions were "minor," and "not pervasive." *Id.* at 17 (internal quotation marks omitted). The court concludes that Commerce's decision to use total AFA based on its collective findings is supported by substantial evidence and in accordance with law.

"In general, use of partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty." *Mukand, Ltd. v. United States*, 767 F.3d 1300 ,

---

[12] With respect to the timing of Commerce's request, Commerce requested the documents when it did because of deficiencies in HHI's initial and supplemental questionnaire responses. HHI did not request additional time to respond to the supplemental questionnaire nor does HHI claim that it could not comply with the request in a timely manner.

[13] HHI claimed that this reporting issue concerned less than five percent of sales, and its effect on gross unit price for those sales was 0.89 to 2.69 percent. Oral Arg. 26:52-27:17, 27:46-28:02 (reflecting time stamp from the recording).

1308 (Fed. Cir. 2014). Commerce uses "total AFA" when it concludes "that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability, it must use an adverse inference in selecting among the facts otherwise available." *Deacero S.A.P.I. de C.V. v. United States*, 42 CIT __, __, 353 F. Supp. 3d 1303, 1305 n.2 (2018). The U.S. and home market prices are central to the dumping calculation. Commerce explained that the consequence of a failure to report properly service-related revenues and the price of a subject LPT part[14] caused the reported U.S. prices to be overstated and home market prices to be understated. Remand Results at 16. Commerce also explained that HHI's selective provision of sales documentation undermined the reliability of its reporting of expenses associated with U.S. sales.[15] *Id.* at 16. Commerce reasonably found that the

---

[14] Regarding the LPT part, HHI avers that the agency may not "extrapolate from *a single error*, which may well have been an isolated oversight, a conclusion that the entirety of the respondent's submissions concerning other classes of subject merchandise are unreliable." HHI's Opp'n Cmts at 16 (quoting *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 27 CIT 1059, 1061, 276 F. Supp. 2d 1371, 1374 (2003)) (emphasis added). "On the other hand," however, "numerous 'oversights' would likely suggest a 'pattern of unresponsiveness' justifying not only the application of facts available [], but of AFA." *Fujian*, 276 F. Supp. 2d at 1374 n.2 (citation omitted). Despite HHI's effort to disaggregate its reporting omissions and errors, Commerce identified several such "oversights," Remand Results at 16, detracting from HHI's argument. Additionally, regarding the home market sales of the LPT part, Commerce explained that its discovery of this misreporting in sales for which it had requested full documentation gave it reason to question the reliability of the other home market sales for which Commerce did not request full documentation. I&D Mem. at 25.
[15] HHI contends that it is unclear how its failure to provide commission expense or transportation documents support the use of total AFA because those expenses were reported in fields separate from the gross unit prices. HHI's Opp'n Cmts at 7, 8. Commerce explained, however, that the missing information was "important . . . to have [an] accurate starting point from which to calculate [constructed export price] and

reporting failures "cut across and affect all of [HHI's] reported data" and, thus, prevented the agency from relying on HHI's reporting "because the basic elements of a dumping calculation (i.e. the reported gross prices of the [U.S.] and home market) are deficient." *Id.* at 26.  The deficiencies in HHI's questionnaire responses were not limited to discrete categories of information but included service-related revenues, the LPT part, and sales related documentation.  These gaps were sufficiently prevalent that Commerce reasonably determined that the use of partial AFA was not practicable.

## II. Accessories

HHI requests that the court affirm the agency's determination concerning accessories.  HHI's Supp. Cmts at 1.  ABB argues that the court need not rule on this issue because Commerce's discussion of accessories is moot since it had no bearing on the agency's use of total AFA.  ABB's Supp. Cmts at 15.  The Government does not express a view, simply requesting that the court sustain the Remand Results.[16]  *See* Gov.'s Supp. Cmts at 18.  No party challenged the Remand Results with respect to accessories by the deadline for submission of comments in opposition to the Remand

---

normal value, or, at a minimum, calculate adjustments to those starting prices." Remand Results at 22 (internal quotation marks omitted).

[16] In the underlying proceeding, Commerce responded to ABB's argument as follows:
> Considering the [c]ourt's finding that there is a need for guidance on the term "accessories," we further examined the record.  After analyzing the factual information regarding "accessories" and assessing [HHI's] business practices regarding the term, we find it necessary to clarify our treatment of "accessories" in this case.  For this reason, we disagree with ABB that we should not include our discussion of "accessories" and have included our discussion.

*Id.* at 19.

Court No. 17-00054   Page 17

Results, therefore, any such arguments are waived. Upon review of the Remand Results, Commerce properly reevaluated its treatment of accessories; therefore, the Remand Results are sustained with respect to the treatment of accessories.

## CONCLUSION

For the foregoing reasons, the court finds that the Remand Results comply with the court's remand order, are supported by substantial evidence and otherwise in accordance with law. Judgment will enter accordingly.

/s/    Mark A. Barnett
Judge

Dated: August 2, 2019
New York, New York